[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

---

No. 14-13048

---

D.C. Docket No. 3:13-cv-01287-HES-JBT


LESLIE PINCIARO DUDLEY,
on behalf of herself and all others similarly situated,

                Plaintiff - Appellee,

versus

ELI LILLY AND COMPANY,
a Foreign For-Profit Corporation,
LILLY USA, LLC,
a foreign for-profit limited liability company,

                Defendants - Appellants.

---

Appeal from the United States District Court
for the Middle District of Florida

---

(December 29, 2014)

Before TJOFLAT, MARCUS and WILSON, Circuit Judges.

MARCUS, Circuit Judge:

In this interlocutory appeal, Appellants Eli Lilly and Company and Lilly USA, LLC (collectively, "Lilly") appeal from a district court order granting the Appellee Leslie Dudley's motion to remand this class action back to the Circuit Court of Duval County, Florida. Dudley's complaint alleged that Lilly did not make certain incentive payments due to Dudley and other similarly situated individuals who had been employed at the company. Lilly removed the case to the United States District Court for the Middle District of Florida pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). After considering the complaint, the removal petition, and the evidence that had been presented, the district court granted Dudley's motion to remand the case to state court, finding that Lilly had not met its burden of establishing by a preponderance of the evidence that the amount in controversy exceeded $5,000,000, as required for federal subject matter jurisdiction under CAFA. See 28 U.S.C. § 1332(d)(2). The court determined that Lilly's proffers about the amount in controversy were purely speculative because Lilly had failed to identify a specific number of class participants made up of only those employees who did not receive their promised compensation; and had failed to identify the amount each member was entitled to receive as compensation. We granted Lilly permission to appeal under 28 U.S.C. § 1453(c)(1), and after having considered the matter and taken oral argument, we conclude that on the limited record presented, the district court did not clearly err

in determining that Lilly has failed to meet by a preponderance of the evidence CAFA's amount-in-controversy requirement. Accordingly, we affirm.

### I.

We review a district court's decision to remand a CAFA case for lack of subject matter jurisdiction de novo. Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 751 (11th Cir. 2010). As with all diversity cases, we review for clear error any factual determinations necessary to establish jurisdiction. See, e.g., Texas Acorn v. Texas Area 5 Health Sys. Agency, Inc., 559 F.2d 1019, 1024 (5th Cir. 1977)[1] (reviewing for clear error the district court's finding that the amount in controversy had been met); Rexford Rand Corp. v. Ancel, 58 F.3d 1215, 1218 (7th Cir. 1995) ("The determination of the amount in controversy is a fact-specific inquiry. Thus, we review the district court's finding that the amount in controversy exceeds $50,000 for clear error."); McCormick v. Aderholt, 293 F.3d 1254, 1257 (11th Cir. 2002) (reviewing for clear error the district court's findings regarding domicile for diversity jurisdiction purposes); Vareka Invs., N.V. v. Am. Inv. Props., Inc., 724 F.2d 907, 910 (11th Cir. 1984) (reviewing for clear error factual question of a corporation's principal place of business for diversity jurisdiction purposes). Thus, we review de novo the district court's ultimate legal conclusion that the underlying factual allegations are insufficient to establish CAFA

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), we adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981.

3

jurisdiction, and we review for clear error the district court's determination that Lilly failed to establish that the amount in controversy exceeded $5 million by a preponderance of the evidence. See Amoche v. Guarantee Trust Life Ins. Co., 556 F.3d 41, 48 (1st Cir. 2009) (holding in a CAFA case that it would review for clear error "that portion of the district court's assessment of subject matter jurisdiction composed of factual findings," and would review de novo its "ultimate assessment of jurisdiction"); accord Watkins v. Vital Pharm., Inc., 720 F.3d 1179, 1181 (9th Cir. 2013); Blockbuster, Inc. v. Galeno, 472 F.3d 53, 56 (2d Cir. 2006).

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). The statute at issue today has expanded considerably the subject matter jurisdiction of the federal courts over class actions that meet certain minimal requirements. Miedema v. Maytag Corp., 450 F.3d 1322, 1327 (11th Cir. 2006). Specifically, CAFA grants federal district courts jurisdiction over class actions where (1) any member of the plaintiff class is a citizen of a state different from the state of citizenship of any defendant, (2) the aggregate amount in controversy exceeds $5 million, and (3) the proposed plaintiff class contains at least 100 members. See 28 U.S.C. § 1332(d)(2), (5)-(6) (emphasis added); S. Fla. Wellness, Inc. v. Allstate Ins. Co., 745 F.3d 1312, 1315 (11th Cir. 2014).

Recently, the Supreme Court decided Dart Cherokee Basin Operating Co. v. Owens, 574 U.S. __, 2014 WL 7010692 (Dec. 15, 2014), which shed additional light on the jurisdictional requirements found in CAFA. Prior to Dart, this Court had presumed that in enacting CAFA, Congress had not intended to deviate from "established principles of state and federal common law," Miedema, 450 F.3d at 1328-29 (quoting United States v. Baxter Int'l, Inc., 345 F.3d 866, 900 (11th Cir. 2003)), which included "construing removal statutes strictly and resolving doubts in favor of remand," id. at 1328. In Dart, however, the Supreme Court made clear that "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." 2014 WL 7010692, at *6, slip op. at 7. This conclusion was driven, in part, by the legislative history, including language found in Senate Report No. 109-14 (2005), which observed that CAFA's "provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." Id. at 43, as reprinted in 2005 U.S.C.C.A.N. 3, 41. Applying this binding precedent from the Supreme Court, we may no longer rely on any presumption in favor of remand in deciding CAFA jurisdictional questions. See United States v. Archer, 531 F.3d 1347, 1352 (11th Cir. 2008) (holding that an intervening decision of the Supreme Court will overrule our prior precedent if the

5

Supreme Court decision is clearly on point and undermines our prior precedent to the point of abrogation).

Dart also shed light on the necessary contents of a CAFA defendant's notice of removal. There, Dart's notice of removal had alleged that all three CAFA requirements had been met, among other things, charging an amount in controversy of $8.2 million. 2014 WL 7010692, at *3, slip op. at 2. In moving to remand, the plaintiff argued that Dart's notice of removal had included "no evidence" proving that the amount in controversy actually exceeded the $5 million threshold requirement. Id. at *3, slip op. at 3. Dart responded with a declaration from one of its executive officers, including a detailed damages calculation indicating that the amount in controversy exceeded $11 million. Id. at *3, slip op. at 3. Without challenging Dart's new calculation, the plaintiff claimed that the amount-in-controversy submission came too late because it had not been included in the notice of removal, and the district court agreed. Id. at *3-4, slip op. at 3. The Supreme Court did not. It held that "when a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." Id. at *5, slip op. at 5. In other words, all that is required is a "short and plain statement of the grounds for removal," including "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Id. at *3, *6, slip op. at 1, 7

(quoting 28 U.S.C. § 1446(a)). That is the end of the matter, unless "the plaintiff contests, or the court questions, the defendant's allegation." Id. at *6, slip op. at 7.

In cases like this, however -- where the plaintiff contests the defendant's amount in controversy -- Dart recognized that the district court must go further. Citing to the CAFA statute, the Supreme Court observed that when a notice of removal's allegations are disputed, the district court must find "'by the preponderance of the evidence, that the amount in controversy exceeds' the jurisdictional threshold." Id. at *5, slip op. at 6 (quoting 28 U.S.C. § 1446(c)(2)(B)). We have repeatedly held that the removing party bears the burden of proof to establish by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum. S. Fla. Wellness, 745 F.3d at 1315; Pretka, 608 F.3d at 752; Miedema, 450 F.3d at 1330. We've also observed that, in making this calculation, "[a] court may rely on evidence put forward by the removing defendant, as well as reasonable inferences and deductions drawn from that evidence." S. Fla. Wellness, 745 F.3d at 1315. "[A] removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." Pretka, 608 F.3d at 754. Moreover, at the jurisdictional stage, "the pertinent question is what is in controversy in the case, not how much the plaintiffs are ultimately likely to recover." Id. at 751 (quotation and emphasis omitted). "The amount in controversy is not proof of the amount the plaintiff will

7

recover. Rather, it is an estimate of the amount that will be put at issue in the course of the litigation." Id. (quotation omitted). Dart -- which did not involve a plaintiff's contest to the defendant's jurisdictional allegations -- did not disrupt any of this pre-existing CAFA case law.

We also underscore that jurisdictional facts are evaluated as they stand at the time of removal. Miedema, 450 F.3d at 1331. As a result, under CAFA, class actions may be removed at <u>any</u> point during the pendency of litigation in state court, so long as removal is initiated within thirty days after the defendant is put on notice that a case which was not removable based on the face of the complaint has become removable. See 28 U.S.C. § 1453(b) (traditional one-year window for removal does not apply to class actions). In other words, a CAFA defendant who fails to meet his burden for removal at the early stages of litigation may still have recourse to the federal courts later, after a fuller record has been developed in discovery in the state court. See, e.g., Amoche, 556 F.3d at 53 ("Successive attempts at removal [under CAFA] are permissible where the grounds for removal become apparent only later in the litigation."); Abrego Abrego v. The Dow Chem. Co., 443 F.3d 676, 691 (9th Cir. 2006) ("[L]later-discovered facts may prompt a second attempt at removal" under CAFA.).[2]

---

[2] This only makes sense. The former Fifth Circuit has long held in the general, non-CAFA removal context that when a plaintiff makes new claims in state court, a defendant's right to remove is "revived." See Cliett v. Scott, 233 F.2d 269, 271 (5th Cir. 1956). In Cliett, the

8

## II.

In the complaint before us, Dudley raises four separate causes of action against Lilly, including a breach of employment contract, quantum merit, unjust enrichment and promissory estoppel. She defines the class as:

> All LILLY Fixed Duration Employees ("FDE") who, during the class period, did not receive[:] (1) a sales incentive ("VOB"), and/or (2) a Customer Value Metric ("CVM"), and/or (3) a Service Value Chain ("SVC"), and/or (4) the value of a Reward Recognition Trip ("RRT"), payments as a result of their scheduled termination date occurring before the completion of the time period used for calculating said amounts.

Thus, in addition to seeking as damages the value of the reward trip, or RRT, Dudley seeks payments for three different categories of sales-incentive payments. Importantly, the complaint specifies that each former employee in the class was entitled to <u>one or more</u> of the various incentive payments, using the disjunctive "and/or." Moreover, the complaint alleges that each of these categories of

---

plaintiffs had originally filed "suit for an accounting for moneys" to collect a judgment against non-resident defendants related to the accounts on 700 acres of land. Id. at 269-70. After several years of litigation in state court, the plaintiffs filed an amended petition asserting for the first time title to the entire 700-acre tract. Id. at 270. The defendants promptly removed the case to federal court; the plaintiffs then moved to remand, claiming "the defendants had voluntarily submitted to the jurisdiction of the state court and had lost their right to remove." Id. In affirming the district court's final judgment and denial of the motion to remand, the Fifth Circuit held that the filing of the amended petition by the plaintiffs created "an entirely new and different suit," over which "defendants' right to remove revived." Id. at 271. See also S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 493 (5th Cir. 1996) ("A defendant who fails in an attempt to remove on the initial pleadings can file a second removal petition when subsequent pleadings or events reveal a new and different ground for removal." (quotation and alteration omitted)); O'Bryan v. Chandler, 496 F.2d 403, 409-10 (10th Cir. 1974) (developments subsequent to and not concluded by prior remand order provide grounds for a second removal petition).

9

payments is calculated using different time frames. Dudley says, for example, that during her employment at Lilly, the payout periods for the VOB and the CVM changed from quarterly to bi-annual. The SVC, however, is calculated annually. As for the RRTs, Dudley alleges that each is valued at $5,000, and that they are awarded for individual performance.

The crux of the complaint is that because Dudley's employment term came to an end before the calculation periods for these incentives ended, Lilly allegedly failed to pay Dudley the incentives she had earned, in violation of her employment contract. She says, moreover, that none of the former Fixed Duration Employees in the class were paid these incentives for work performed before their employment terms ended. Notably, the complaint does not allege, and we cannot tell from this record, how many of the former Fixed Duration Employees were withheld sales incentives and/or Customer Value Metrics and/or Service Value Chains and/or the value of any Reward Recognition Trips. Dudley does claim, however, that she and the other FDEs had been routinely paid incentives in previous payout periods.

After Lilly removed the complaint to federal court, Dudley moved to remand the matter back to the state court, on the ground that because Lilly's amount-in-controversy allegations were based on "speculation and conjecture," Lilly had failed to establish the threshold amount by a preponderance. She claimed that

Lilly's notice of removal "ignored the putative class definition" and that the aggregate claims set forth in the complaint did not exceed $5 million.

In an effort to meet its burden, Lilly offered two affidavits from James R. Harenberg, a Senior Director for Lilly's U.S. Sales Services -- it first attached an affidavit with its notice of removal, and then included an updated affidavit in its opposition to Dudley's motion to remand. Harenberg's updated affidavit provides that Lilly has used a variety of incentive programs for sales representative FDEs that typically involve periodic payments based on the achievement of certain goals. Harenberg explained that a February 2011 program, for example, made sales representatives "eligible for incentive payments based on achievement of quarterly and biannual goals." According to Harenberg, the calculation periods for quarterly incentives are January 1 through March 31; April 1 through June 30; July 1 through September 30; and October 1 through December 31. The calculation periods for biannual incentives, however, are October 1 through March 31 and April 1 through September 30.

Harenberg also avers that "[s]ince January 1, 2008, Lilly has employed 1,181 FDEs as sales representatives who were eligible to receive incentive compensation, provided other requirements for such compensation were met." He then says that 210 of the 1,181 were still employed by Lilly as of October 28, 2013, leaving 971 former FDEs. Of the 971, "122 eligible FDEs ended

employment on March 31 or September 30, the end of a quarterly period and a biannual period." Moreover, "339 eligible FDEs ended employment on June 30 or December 31, the end of a quarterly period but not a biannual period," and "510 eligible FDEs ended employment on a date other than a quarterly or biannual period end date."

As for the amount of damages contemplated per class member, Lilly said in its notice of removal and its accompanying affidavit that "in 2011, for example, quarterly incentive compensation targets for sales representatives ranged from $1,450 to $4,725 and biannual incentive compensation targets ranged from $2,700 to $5,500." It used the middle of these ranges -- $3,087.50 and $4,100, respectively -- as well as Dudley's allegation that a Reward Recognition Trip is valued at $5,000 to estimate that: (1) the 122 former FDEs who ended their employment at the end of a biannual period "could have [] forfeited" an aggregate amount of $610,000 in Reward Recognition Trips; (2) the 339 former FDEs who ended their employment at the end of a quarterly period (but not the end of a biannual period) "could have [] forfeited" an aggregate amount of $3,084,900 in biannual incentives and RRTs; and (3) the 510 former FDEs who ended their employment on a day other than the last day of either incentive period "could have [] forfeited" an aggregate amount of $6,215,625 in quarterly incentives, biannual

incentives, and RRTs. Thus, says Lilly, Dudley's complaint placed $9,910,525 into controversy.

Dudley challenged Lilly's evidential foundation in district court, arguing, among other things, that Lilly's calculations erroneously assumed that all former FDEs were eligible for all benefits and damages, without offering any proof as to this point. Dudley further observed that nothing in her complaint even remotely suggested which of these benefits the FDEs were entitled to. The district court agreed with Dudley, and concluded that Lilly's proffer was insufficient to satisfy its burden. The court observed that Lilly had not only failed to identify a specific number of class participants, but, more significantly for our purposes, also left the court to guess at "what each member was entitled to receive as compensation and did not." The district court also held that "[a]lthough there may be a possibility that some members may have the same amount of damages, it is not likely that each member of the Class has the exact amount of incentive compensation owed to them as does Plaintiff." The district court concluded that the defendant had failed in two attempts to establish by a preponderance of the evidence that the amount in controversy for removal under CAFA had been met.

### III.

After thorough review of this limited record, we conclude that the district court did not clearly err in finding that Lilly failed to show, by a preponderance of

the evidence, that CAFA's amount-in-controversy requirement had been met. Once Dudley contested Lilly's notice of removal about its amount-in-controversy allegations, Lilly responded with proffers in affidavit form. It then fell to the district court to discern whether the amount in controversy had been established.

The main problem for Lilly, as the district court found, is that it failed to establish by a preponderance of the evidence the amount of incentive compensation that was allegedly denied to the class members. Accepting the plaintiff's good-faith allegation that all 971 former Fixed Duration Employees were members of the class, Lilly has failed to establish even generally the dollar amounts that each of the FDEs may have been denied in payment incentives as a result of their termination dates. As we've noted, the complaint does not say that all of these FDEs were denied all of the possible categories of incentive payments; rather, it avers only that these FDEs were denied some combination of the sales incentive or VOB (calculated quarterly and later biannually), and/or the Customer Value Metric (calculated quarterly and later biannually), and/or the Service Value Chain (calculated annually), and/or the Reward Recognition Trip (calculated annually).

Notably, Lilly's affidavits and briefing in no way suggest which employees specifically relate to which form of incentive payment. Instead, Lilly breaks up the former FDEs into three groups -- those who were terminated at the end of a

biannual period, those terminated at the end of a quarterly period, and those terminated at some other time -- and only gives estimates of quarterly incentive payments, biannual incentive payments, and RRT values. It does not provide any information about the VOB, CVM or SVC estimates. This means that it does not specify how the quarterly incentive payment estimates may have been split between the VOB and the CVM, nor how the biannual incentive payment estimates may have been split between the VOB and the CVM, nor, indeed, where the SVC estimates may have fit into the calculations. Again, Dudley's complaint only alleges that the members of the FDE class were denied at least one of these payments, not necessarily all. Thus, it was impossible for the district court to ascertain with any degree of confidence how many class members were denied which payments, or even how the estimates for the different categories of payments were allocated within the quarterly and biannual groupings.

Moreover, in dividing the incentive payments in terms of those calculated quarterly, those calculated biannually, and RRTs, Lilly has provided a range of possible incentive payments, and then used in its calculations the "midpoint" of these ranges multiplied by the number of FDEs terminated within these categories. However, Lilly has provided the district court with no way of judging whether these "midpoint" numbers are realistic, compared to, for example, how much each of the FDEs in the class were paid in past payout periods. Nor, more importantly,

has Lilly even compared these midpoint numbers to average employee payments made in past payout periods.

In short, as we see it, Lilly has failed to provide estimates of incentive payments that corresponded to the categories of incentive payments identified in the complaint; it also failed to recognize and build into the calculus that not all of the FDEs were alleged to have been denied all of the incentive payments; and it failed to provide any meaningful guidepost for the payment estimates it had provided. As a result, the evidential foundation was bare -- revealing only how many FDEs were terminated on certain dates, and the range of compensation an FDE theoretically could have received -- and the district court was unable to make any "reasonable inferences and deductions drawn from that evidence[] to determine whether the defendant has carried its burden" of sustaining the jurisdictional threshold. S. Fla. Wellness, 745 F.3d at 1315. Simply put, the district court did not clearly err in finding that Lilly had failed to meet its burden.

Lilly argues that at this stage of the litigation, it should not have to concede liability or be unduly burdened by providing "detailed, sales-record-by-sales-record proof of incentive payments allegedly forfeited at termination" for each former employee. We agree with these observations, but we cannot see how the district court could generally infer the amount in controversy from this record. Lilly, after all, had access to its own employment records and its evidence shows

that it was able to parse out FDEs and their termination dates, and to provide a payment range for each category of compensation. It seems to us that using these same employment records or others, Lilly could have provided the district court with more information about the amount of compensation that was allegedly denied the class members, without conceding liability or being unduly burdened.

It is surely possible that while in state court more evidence about potential damages may come to light, and, as we've already discussed, Lilly may seek to return to federal court. At this stage of the litigation, however, we are compelled to conclude that the district court did not clearly err in determining that Lilly has not established, by a preponderance of the evidence, that the amount in controversy exceeded $5,000,000. We, therefore, affirm.

**AFFIRMED.**

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

John Ley
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

December 29, 2014

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 14-13048-SS
Case Style: Leslie Dudley v. LLY, et al
District Court Docket No: 3:13-cv-01287-HES-JBT

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1.

Counsel appointed under the CRIMINAL JUSTICE ACT must file a CJA voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for a writ of certiorari (whichever is later).

Pursuant to Fed.R.App.P. 39, costs taxed against the appellants.

The Bill of Costs form is available on the internet at www.ca11.uscourts.gov

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Brenda H. McConnell at (404) 335-6209.

Sincerely,

JOHN LEY, Clerk of Court

Reply to: Djuanna Clark
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs



14-13048-SS Leslie Dudley v. LLY, et al "Opinion Issued On the Courts own Motion Opinion" (3:13-cv-01287-HES-JBT)
ecf_help
to:
efile_appeals
12/29/2014 02:40 PM
Hide Details
From: ecf_help@ca11.uscourts.gov
To: efile_appeals@flmd.uscourts.gov

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing.

United States Court of Appeals for the Eleventh Circuit

Notice of Docket Activity

The following transaction was filed on 12/29/2014

Case Name:      Leslie Dudley v. LLY, et al
Case Number:    14-13048
Document(s):    Document(s)

Docket Text:
Opinion issued by court as to Appellants LLY and Lilly USA, LLC. Decision: Affirmed. Opinion type: Non-Published. Opinion method: Per Curiam.

Notice will be electronically mailed to:

Ellen Elizabeth Boshkoff
Stephen M. Brooks
Thomas William Carroll
Eric J. Holshouser
Sheryl L. Loesch, Clerk of Court
D. Lucetta Pope
Janet R. Varnell
Brian W. Warwick

Notice will not be electronically mailed to:

William Sumner Scott
Law Offices of William J. Scott, PA
554 LOMAX ST
JACKSONVILLE, FL 32204-4115

Steven T. Simmons
Varnell & Warwick, PA
PO BOX 1870
LADY LAKE, FL 32158

The following document(s) are associated with this transaction:
Document Description: Opinion
Original Filename: 201413048.pdf
Electronic Document Stamp:
[STAMP acecfStamp_ID=1160056652 [Date=12/29/2014] [FileNumber=7356049-0]
[80941b639f4e86c4d01c2e7bc64cb458207310f99d8ce3e93356a454beb2d7a27bdd3afa43fd871c8d6c469ca934l3eef154b6f2fa36f2ee941b0c5b864c7c8c]]

Document Description: OPIN-1A Notice to Counsel/Parties
Original Filename: /opt/ACECF/live/forms/djuanna_clark_1413048_7356049_OPIN-1AIssuanceofOpinionWithCosts_301.pdf
Electronic Document Stamp:
[STAMP acecfStamp_ID=1160056652 [Date=12/29/2014] [FileNumber=7356049-1]
[60307d898e17a34a1187c58c5c737746ecb40017d0dc378dca53f485c482fa974ad7a0a095221995a908f0fd1908d3f47b8fdccf08aad1cab017ee221dc68156]]
Recipients:

- Ellen Elizabeth Boshkoff
- Stephen M. Brooks
- Thomas William Carroll
- Eric J. Holshouser
- Sheryl L. Loesch, Clerk of Court
- D. Lucetta Pope
- William Sumner Scott

- Steven T. Simmons
- Janet R. Varnell
- Brian W. Warwick